## RICHARD J. SMITH, ET UX
vs.
## CONNECTICUT FAT RENDERING AND FERTILIZING CORPORATION

Superior Court        New Haven County        File #47539

Present:   Hon. ALLYN L. BROWN, Judge.

Alfred C. Baldwin, Jr.;
Thomas R. Robinson;        Attorneys for the Plaintiff.

Spellacy & Yeomans;
Fitzgerald, Foote & Fitzgerald;
Weissman & Maretz;        Attorneys for the Defendant.

## MEMORANDUM FILED JULY 22, 1935.

BROWN, J.   Pursuant to the application of the plaintiffs as owners of not less than one-tenth of the defendant's capital stock, the undersigned as a judge of this court under **Sec. 3467 of the General Statutes,** appointed Howard J. Graff temporary receiver of the defendant corporation on April 30, 1935, and set May 17, 1935 as the date for hearing on the confirmation of such appointment. The action is returnable to the first Tuesday of June, 1935. The hearing of May 17th was continued and further evidence taken and claims made on May 31st, June 21st, and June 28, 1935. At the conclusion of the evidence on this last date it was mutually stipu-

lated in open court by all of the parties appearing, through their counsel, that upon the hearing had the court should determine not only whether the appointment of the temporary receiver should be confirmed or not, but also the question upon the merits as to whether or not he should also be confirmed as permanent receiver.

A detail review in this memorandum of the extensive evidence produced, would serve no good purpose. Very briefly, it presents the picture of the defendant as a corporation which had for many years been engaged in the fat-rendering business in a plant at West Haven, with equipment which had not been kept up to date, methods of operation which were not efficient, and a board of directors which, while its integrity is not questioned, possessed perspicacity and operative capacity essential to the proper discharge of its function which was but slight indeed. As a natural consequence the defendant's business was unsuccessful. On the other hand, Thomas Monti of New York, the virtual owner of Monti-Van Iderstine, Inc., a New York corporation, hereinafter referred to as the Monti Company, is not only experienced and skilled in the fat-rendering business, but is a very shrewd business man as well. His Company, engaged in the fat-rendering business and located in New York, has for a long time operated to some extent in Connecticut, and just prior to October 1, 1934, was in a measure a competitor of the defendant. Monti became conversant with the predicament of the defendant, and apparently concluded that it offered a lucrative opportunity for him. Whether he seriously contemplated the organization of a rival company as a means of getting the defendant's customers and business for himself, as certain testimony in the case tends to indicate, is not of controlling importance. What he did do, after using his employes to follow the defendant's trucks to learn who the customers were from whom it collected, and getting such other information as he felt essential for his purpose, was to approach the defendant's directors to get them to enter into a contract whereby the Monti Company would become the operating manager of the defendant. This eventuated in the contract **Exhibit A** in evidence, dated September 27, 1934, and effective October 1, 1934.

Though a mere reading of this contract sufficiently discloses its one-sided nature, providing as it does among other things

for a prospective high return to the Monti Company and a low one to the defendant's stockholders, and a right in the Monti Company to cancel it at the end of two years, and the right to renew it for five years more at the end of the first five years if it sees fit, while the defendant has no alternative but to be bound by it for the entire ten years if the Monti Company so elects,—were the dispute here one between simply the directors individually of the defendant, who approved this contract, and the Monti Company, the contention of counsel for the latter, that the equitable relief of a receivership should not be granted, would carry greater weight. But the plaintiffs here are the stockholders of the defendant Company, and the question at issue is as to whether or not **they** are entitled to such equitable relief, the contract having never been authorized or ratified by them.

The law is clear that directors of a corporation can not without authorization by the stockholders "perform acts which involve fundamental changes in the corporation" (14 a C.J. 81, Sec. 1842), nor can they "delegate their own discretionary powers" (Idem. Sec. 1863.) **Section 3409 of the General Statutes** as well as **Article II of the defendant's by-laws,** vested the executive management of its property and affairs in its board of directors to be exercised by it within the limits of the above principles. **Gold Bluff M. & L. Corporation vs. Whitlock, 75 Conn. 669, 672.** Testing the conduct of the defendant's directors in entering into the contract **Exhibit A** by an application of the foregoing principles, it is clear from the terms of the instrument itself that it involved a violation thereof. **Exhibit A** constituted the Monti Company the defendant's "general executive managers . . . with full power and authority" to hire and discharge employees, make changes in the plant machinery, buy and sell all materials in the conduct of the business, change the business methods employed, —all at its own discretion, or in short "to assume complete charge of all the business activities (of the defendant) as they relate to the purchase of merchandise, manufacture of products, and distribution thereof." **Exhibit A** further deprived the defendant of the power to increase its capital stock or "incur any unusual indebtedness, or to make additional contracts of any kind or description", unless it first obtained the written consent of the Monti Company. It would be difficult to provide for a more complete delegation and surrender of the directors' discretionary powers. And

when it is had in mind that these directors, elected for a one year term, were making this surrender for a possible period of ten years, the completeness of their abdication is even more patent (**II Fletcher on Corporations 377, Sec. 495**) and more obviously in conflict with the rules above stated. (**Idem 377, Sec. 496.**)

The plaintiffs also rely upon "gross mismanagement" and consequent waste of the defendant's assets through the Monti Company's operations under the contract. In this connection the latter's counsel contend that the evidence calls for just the opposite conclusion. To my mind whether the interpretation of the accountants' figures as to the results of operations from October 1, 1934 to April 29, 1935, claimed by plaintiffs or claimed by the Monti Company is correct, is not the vital consideration in this connection. This brief period was perhaps hardly long enough to enable Monti to fully determine whether he could make more money by operating the defendant on a profitable basis, at least for the time being, or by wrecking it. Under the contract he had the power to adopt which course best suited his own ends. His violations of the contract, in disposing of certain of the defendant's equipment without the consent of the board of directors, in failing to pay for machinery installed as the contract required, and in failing to divert to it all material collected by the Monti Company in Connecticut, are significant in this connection, not so much for the amount involved financially, but as indicative of Monti's proprietary attitude and intentions to disregard the defendant's rights and best interests even so early in the life of the contract. In so far as the rights of these plaintiff stockholders are concerned, whether or not the mismanagement and waste of assets had eventuated to the extent claimed, it is clear that upon the whole situation they are entitled to relief and that a receivership is the only method of adequately affording it. By their vote of April 25, 1935, the defendant's directors voted to terminate the contract with the Monti Company. This action apparently has opened the door to a claim for substantial damages by the Monti Company for breach of the contract by the defendant, with an accompanying attachment which undoubtedly, upon the situation disclosed by the evidence, would result in either the outright elimination of the defendant as a competitor of the Monti Company, or at best the appointment of another receiver. This prospects but fortifies

the conclusion that the present receivership should be con-tinued, whereunder the conflicting rights of all the interested stockholders and creditors can be properly and fairly determ-ined ·with a minimum expense and loss. **Chatfield Co. vs. Coffey Laundries, Inc., 111 Conn., 497, 501.**

The appointment of Howard J. Graff as temporary receiver is confirmed; he is also confirmed as permanent receiver; and **the motions of the Monti Company and of the Hartford Market Company, et als, to dissolve the temporary receivership are denied.**

To complete the file consonant with the stipulation men-tioned in the first paragraph hereof, counsel for the defendant Company are ordered to file its answer to the complaint (**Chatfield Co. vs. Coffey Laundries, Inc., 111 Conn. 497, 502**), and counsel for the plaintiffs their written motion for con-firmation of the temporary receiver as such and as permanent receiver (**Sec. 235, Practice Book**) forthwith.