[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO OWNERSHIP OF SHARES AND DIRECTORS OF NERI BROS. CONSTRUCTION CORPORATION
This case involves a closely held corporation, the principals of which are family members. As a result of serious disagreements between the plaintiff Alan Neri and his brother, the defendant Carl Neri, this action was commenced to determine, CT Page 1036 inter alia, the number of outstanding shares in the corporation and the owners of those shares.
The court heard evidence over several days on the conflicting claims of the parties on this issue. Complicating the process are the facts that the incorporation occurred in 1967, the corporate records are incomplete and contain numerous errors, and the minute book is lacking minutes for the years between February 3, 1968 and March 17, 1983. In addition to the conflicting claims of Alan and Carl Neri, the court has been asked to determine the status of two alleged minority stock interests, those of another brother John Neri and the deceased mother of the brothers, Anna Neri.
An obvious source of information — the shares of stock themselves — is also lacking here, as only two originals of the various stock issues have surfaced. These are two certificates for 300 shares each, one issued to Alan Neri and one issued to Carl Neri. The remaining certificate were destroyed by Carl Neri on March 11, 1992.
Thus, in further light of conflicting testimony of Alan, Carl and John Neri, amongst others, the court must resort to a variety of documents, tax returns and miscellaneous papers to unravel this maze.
An outline of the various stock "issues" is appropriate, because in his brief, the defendant Carl Neri has even, questioned the 1967 original issue of 73 shares, claiming Alan never conveyed the property to the corporation which was to pay for his 66 shares.
On February 29, 1968, Alan was issued 2 shares, Carl 5 shares. The disputed 5 shares each to John and Anna apparently date from this issue. It should be noted, however, that John Neri is mentioned as a stockholder in the "Minutes of First Meeting of Stockholders" dated March 17, 1967. (Exhibit M).
On February 28, 1970, Alan was issued 9 shares and Carl 8 shares. At this point the corporate shares totalled 107. Alan held 77 or almost 72% and Carl held 20 shares or about 19%. The remaining 10 shares or about 9% are the 5 shares of John and the 5 shares of Anna which Carl denies were ever issued.
The next stock issue occurred February 28, 1979 when 300 CT Page 1037 shares were issued to both Alan and Carl. It is this issue Carl relies on as the basis for his 50% ownership of the corporation. Alan questions this issue in its entirety.
Though the shares were never issued, the minute book under date of September 3, 1986 recites an authorization of 500 shares, 250 to Alan and 250 to Carl. Alan denies any knowledge of this transaction.
The court will address these transactions in chronological order, since either the plaintiff Alan Neri or the defendant Carl Neri has questioned at least in part every issue but that of February 28, 1970.
 I.
Carl Neri apparently first raised the question of Alan's alleged failure to "pay for" his original 66 shares in the course of the hearing to determine share ownership. The shares were issued in March of 1967. There were additional shares issued to Alan and Carl in 1968 and 1970. These two issues have not been questioned by any party.
It appears to the court that 25 years is a long time to wait before attacking a transaction which was spread on the corporate minute book, supplemented by subsequent stock issues, reflected in the stock book (Exhibit N), and then reported in the Biennial Reports of the corporation. (Exhibits O and P, dated 10/20/80 and 12/31/78). These reports, signed by Carl Neri, list 707 
107 shares issued and outstanding.
However, it is significant that in these two reports, Carl Neri stated under oath that all 707 and 107 shares listed were paid in full. Alan Neri is listed as a stockholder.
The court concludes that there was substantial evidence to contradict the defendant's attack on the 66 shares of Alan Neri and that the parties treated those share as having been paid for. By virtue of Carl Neri's holding them out as paid for, and by his failure to question the issue till the midst of litigation in 1992, he is deemed guilty of laches and is now estopped from questioning the ownership of shares between himself and Alan as that ownership existed after the February 28, 1970 stock issue.
II. CT Page 1038
Because of their possible impact on the disputed stock issues of 1979 and 1986, the court will next address the claims of John Neri and the Estate of Anna Neri. (Mrs. Neri died in 1987).
It is claimed that John and Anna Neri each owned five shares of stock in the corporation. The defendant Carl Neri denies these shares are valid and outstanding.
In addition to his own testimony, there is considerable documentory evidence to support the claim of John Neri that he is the owner of five shares.
The minutes of the first meeting of the stockholders, held on March 17, 1967, list John L. Neri as one of the "stockholders in attendance." His signature concludes the recordation of business, along with the signatures of Alan and Carl Neri. His initials are affixed to changes in the typed text. (Exhibit K). Consistent with his presence at the meeting is his signature on the March 10, 1967 "Call and Waiver of Notice For First Meeting of Stockholders."
An examination of the corporate minute book, though lacking almost 15 years of minutes, reveals several references to John Neri as a stockholder in notices of meetings and in minutes (Exhibit M) and his presence at meetings (Exhibit K).
Exhibits O and P are significant in that they are the Biennial Reports of the corporation, filed with the Secretary of the State in 1980 and 1978 respectively. Each is signed by Carl Neri. The number of shares reported, 707 and 107, support the proposition that, regardless of the status of the disputed 600 shares issued in 1979, ownership of 5 shares each was in John and Anna Neri. Carl Neri has offered no explanation for the ownership of the 10 shares comprising the 107 and 707 share totals. As noted above, in both Exhibit O and P, Carl Neri asserts that all outstanding shares are paid in full. This is an admission that John's shares were paid for as he is listed as a stockholder in those reports.
There is also in evidence a copy of a stock certificate dated February 29, 1968 showing John Neri to be the owner of 5 shares. (Exhibit I) this certificate is signed by Alan and Carl Neri. CT Page 1039
Reinforcing further John Neri's claim of stock ownership is the repeated appearance of his name as a stockholder or as an "official who is financially involved" with the firm in numerous documents submitted to the Connecticut Department of Transportation. Carl Neri either signed the transmittal letter (Exhibit J, also included as part of Exhibit I) or completed questionnaires which he signed under oath. (Exhibits B, C D). Exhibit I had a copy of John Neri's stock certificate attached to it.
In 1988, 1989 and 1990, the corporation filed for participation in the State's Small Contractors Set-Aside Program. The applications, all signed under oath by Carl Neri, list John Neri as a stockholder. (Exhibits H, G F).
An examination of the corporate federal tax returns is of significance on this question of John Neri's stock ownership. Three returns for 1978, 1982 and 1984 (Exhibits 6-2, 6-13 6-6) list John Neri as a stockholder. The remaining tax returns in evidence do not list John Neri as a stockholder, but they do not account for 100% of the shares, having 2% of the shares unaccounted for. This supports by implication the claims of John Neri.
Finally, the late discovered corporation tax material for 1967 (Exhibit U) and John Neri exhibits 2, 3 and 16 serve to support John Neri's claim that he owned five shares of stock in the corporation — and that he paid for it.
Though Carl Neri disputes their testimony and suggests a conspiracy of family members against him, there was testimony to confirm the ownership of stock by John Neri from Alan Neri Sr., Alan Neri, Jr., Helen Neri, Glen Neri Roseanne Casulo.
The fact that Carl Neri destroyed John Neri's certificate, which he admits, does not eliminate John's ownership. Without a proper recall of shares or their redemption mere physical destruction is of no moment. Nor does the court attach any significance to the fact that the shares were not in John's possession. It appears obvious from the evidences presented that no shares of the corporation were delivered into the hands of the owners but were kept with the corporate stock and minute book.
Carl Neri professes ignorance as to what legal steps were CT Page 1040 appropriate in order to eliminate John as a stockholder and retrieve his shares for nonpayment. Section 33-342 of the General Statutes outlines the process to be pursued. Section 33-351 and 33-352 deal with cancellation. Physical destruction is not the method and formal action by the Board of Directors is dictated.
It is the conclusion of the court that John Neri was and remains the owner of five shares of stock in the Neri Brothers Construction Corporation.
 III.
The ownership of shares by Anna Neri is supported by much of the same evidence that supported John Neri's claim. Though she is not specifically named as often, there are numerous references to her ownership in documents to which Carl Neri attested.
Thus, the transmittals to the State Department of Transportation referred to above (Exhibits C D) list the Estate of Anna Neri as an "official who is financially involved" in the operation of the corporation. This ownership is stated to be .7 per cent of the corporate shares. This is consistent with the computation prepared by Attorney Gallagher and marked as Exhibit 14 of John Neri, allocating five shares to John Neri and five shares to Anna Neri. Carl Neri signed these two transmittals under oath in July of 1988 and July of 1989.
While Anna Neri is not named in those additional documents referred to by the court in connection with John Neri's claim, all of the recitations of percentage of ownership of Alan, Carl and John Neri are consistent with Anna owning shares. None of these listings total 100%, dictating the obvious inference that there was an additional minority stockholder. (Exhibits O, P,6-2 thru 6-5, 6-7 thru 6-13, F, G H). These exhibits cover the period between 1978 and 1989. As the "office manager" who supervised all the internal business operations of the company, Carl Neri either signed these documents or had to have knowledge of them and their preparation.
There was conflicting testimony offered with respect to whether Anna Neri was reimbursed for the $500 she put into the corporation. Carl Neri claims she was repaid in 1968 — leaving unexplained the numerous documents he signed at least until 1989 listing Anna Neri, or her estate as a stockholder. CT Page 1041
Even if the court were to discount the testimony to the effect that Anna Neri was a stockholder, there is substantial evidence to support the conclusion that Anna Neri owned five shares at the time of her death. The absence of a certificate is not fatal to that conclusion in view of the overwhelming documentory evidence to support it.
 IV.
John Neri claims that he was and remains a director of the corporation. Carl Neri relies on the actions taken at a special meeting on March 17, 1983 to support his claim that John was removed as a director on that occasion. At that meeting, the number of directors was purportedly reduced from three to two and Alan and Carl were reconformed as sole directors. (Exhibit M, the minutes of that meeting). This latter action was repeated on August 3, 1986 (Exhibits M and blown up portion, Exhibit Q).
Alan and John Neri denied that such a meeting as that of 1983 took place. The minutes contain no copy of a waiver of notice and do not state John was present. Carl's position is that John was not entitled to notice as he was not a stockholder. He could not say John received notice.
The 1986 minutes contain a waiver of notice but John did not sign it. Though they state John was present, Alan and John deny such a meeting took place. Carl again could not verify that John received notice, though he asserted John never attended meetings.
The court finds it significant that the language of the 1986 minutes purporting to elect Alan and Carl sole directors was added at a later date — a fact Carl admitted. His explanation was that this was done on the recommendation of his accountant. The accountant did not testify and though counsel received court permission to depose him during the proceedings, he was not deposed.
Giving the defendant Carl Neri the benefit of the doubt and assuming these two meetings were held, there are apparent statutory infirmities with the removal and reduction process. Section 33-314(a) requires at least three corporate directors, regardless of any by-law provision. And, assuming that the effect of the 1983 meeting was to remove John and leave a vacancy, Section 33-319a requires that notice of John's CT Page 1042 termination be filed with the Secretary of the State within 90 days. No evidence of such action was ever offered.
Finally, since the court has found that John and Anna Neri were stockholders, it necessarily follows that they were entitled to notice of all meetings of stockholders. (See Section 33-327(a).) Carl has conceded they did not receive any notices because he felt they were not stockholders. Similarly, they did not receive the five day notice required by Article I, Section 3 of the corporations by-laws.
Absent evidence of any corrective action taken pursuant to Sec. 33-331 to validate irregularities at stockholder meetings, the purported reduction in the number of directors and the termination of John Neri as a director were invalid.
 V.
The remaining issues arising from this proceeding involve the stock issues of 1979 and 1986. The plaintiff Alan Neri has asked the court to find the 1979 issue invalid in that it was fraudulently induced. Alan Neri testified that Carl Neri issued the 600 shares (300 to each of them) "for tax purposes only "and that he, Alan, did not intend this transaction to bring Carl from a 19% owner of the corporation to a 45% owner. Alan and Carl were the sole witnesses to this transaction and their respective versions are totally different.
In the view the court takes of this case, it is not necessary, nor desirable, to decide this issue narrowly by making a choice between the versions of Alan and Carl. There are legal factors which are more clear cut.
The court has found both John and Anna Neri to be the owners of five shares, representing a 4.67% ownership interest in the corporation for each of them, as of February 28, 1979.
Consequently, the meetings of February 28, 1979 and September 3, 1986 for which John and Anna did not receive notices, nor for which they did not execute waivers, were unlawful and the business conducted void. (Article I, Section 3 of the By-Laws).
It is also basic corporation law that if a meeting is special, all of the stockholders must be given notice thereof in CT Page 1043 some authentic and legal mode. The omission to give the notice, whatever may be the cause, generally will invalidate the proceedings at the meeting.
Close v. Brictson Mfg. Co., D.C. Neb., 43 F.2d 869 (1930).
Commissioner of Banks v. Tremont Trust Co., 156 N.E. 7,259 Mass. 162 (1927).
Minnesota Loan and Trust Co. v. Cole, 214 N.W. 135,239 Mich. 290 (1927).
Similarly, Article I of the corporation by-laws, Section 2 requires a quorum representing 95% of the outstanding stock at any meeting of the stockholders. John and Anna owned a total of 9.34% of the total shares so that at best, only 90.66% of the shares were represented, if Alan and Carl did attend such meetings.
Directors of a corporation cannot without authorization by the stockholder perform acts which involve fundamental changes in the corporation, . . . . Smith v. Connecticut Fat Rendering and Fertilizing Corp., 2 Conn. Sup. 94 (1935).
While, as to these meetings, John and Anna Neri were ignored as stockholders, John Neri had also been a director. In fact, Carl affirmed his status as a director up to the time of the March 17, 1983 meeting. (This was the meeting at which the number of directors was purportedly reduced to two and whereby John was to be dropped as a director.) As a director in 1979, he was certainly entitled to notice of the meeting of February 28, 1979. (No minutes exist for this meeting, so the court has been using the date placed on the shares issued purportedly pursuant to the meeting). Though he was to be terminated as a director at the special meeting of September 3, 1986, until he was so terminated, he was entitled to notice of this meeting. (The by-law provision for notice would prevail in view of Section 33-316).
Carl Neri concedes there were no written notices to John Neri and the latter testified that he had received none.
Counsel for the plaintiff has cited Delaware cases which are in accord with basic corporation law to the effect that a special meeting of the Board of Directors held without due notice to all CT Page 1044 directors is unlawful and all business conducted at such a meeting is void. The defendant has offered no evidence that would remove these two meetings from this proscription. Thus, the court concludes that by virtue of the failure to give John Neri proper notice, the action taken at the 1979 and 1986 meetings was void.
The court finds a further basis for negating the stock issues of 1979 and 1986. Having found that John and Anna Neri were stockholders of the corporation, the court finds that they held preemptive rights pursuant to Section 33-343 and that those rights were violated by the issues in question (John and Anna each held 4.67% of the outstanding shares in 1970; on September 3, 1986, that interest was down to .41%).
The defendant Carl Neri argues that 33-343 is not applicable to this situation in that the shares in dispute were not part of an "offering or sale by a corporation." (Section 33-343(b)). A careful reading of Henry v. Klein, 15 Conn. App. 496 (1988), cited by the plaintiff, refutes that agreement and places this dispute squarely on the same premise as Klein.
The court concludes that the issues of 1979 and 1986 should also be voided as they violate the preemptive rights of John and Anna Neri (i.e., the Estate of Anna Neri).
 VI.
The court has refrained from making factual determinations based solely on the credibility of the parties or witnesses. However, the court is compelled to note certain actions of the defendant Carl Neri which are disturbing to the court and suggest his credibility on several factual issues is questionable.
From the testimony of Eva Neri Thomas, the court would conclude that Carl Neri felt he was entitled to be a 50% owner of the corporation. It would also appear that his brother Alan did not concur in this perception and, at least up to 1979, never agreed to a 50-50 arrangement.
Carl's actions subsequently suggest a pattern of carefully though out procedures to obtain what he felt he was rightfully owed. The court does not adopt the notion advanced by his counsel that Carl didn't know what steps to take to legally effect changes and was the victim of his own ignorance of the CT Page 1045 law. Nor does the court adopt the view that Carl was unaware of the contents of the documents which repeatedly stated ownership in John and Anna Neri. Rather, the court perceives Carl to be a shrewd and efficient businessman who at some point decided to go after what he felt was rightfully his, regardless of the action required.
Thus, the admitted destruction of the stock certificates, the alteration of the 1986 minutes, the absence of 15 years of minutes from records under his control, the refusal to turn over corporate material first to Alan Neri then to his attorney and some questionable handling of documents in evidence in this case — stock ledger sheets and records and his Exhibit 18.
 VII.
For the reasons stated above the court finds:
(1) That the following parties own these shares off stock and percentages of stock in Neri Bros. Construction Corp.:
a) Alan A. Neri, 77 shares or 71.96%;
b) Carl A. Neri, 20 shares or 18.7%;
c) John L. Neri, 5 shares or 4.67%;
d) Estate of Anna Neri, 5 shares or 4.67%
(2) That John L. Neri was and remains a Director of the Corporation;
(3) That the stock issue of 1979 was void and of no legal effect;
(4) That the stock issue of 1986 was void and of no legal effect.
ANTHONY V. DeMAYO, JUDGE CT Page 1046